# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 12-00649-TLM |
| JAY P CLARK, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| JEREMY GUGINO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 15-06007-TLM |
| ) | |
| RUSSELL and VICTORIA ) | |
| TURNER; JONATHAN DODGE; ) | |
| DAVID and RITA OLSON; KIRK ) | |
| and BRENDA THOMSON; ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

### MEMORANDUM OF DECISION
_____

Before the Court is a motion for summary judgment filed by Kirk and Brenda Thomson (the "Thomsons"), two of the defendants in this § 549 avoidance action.[1] Doc. No. 9. The Court determines that the Thomsons' motion is well taken and will be granted.

---

[1] Unless otherwise indicated, all statutory references in this Decision are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532.

MEMORANDUM OF DECISION - 1

**BACKGROUND AND FACTS**

The undisputed facts are established by the parties' submissions, and by the record in this adversary proceeding, the underlying bankruptcy case, and a related adversary proceeding.[2]

Jay Clark ("Debtor") was a chapter 12 debtor, having filed his petition for relief on March 27, 2012. Forrest Hymas was the chapter 12 trustee. Several of Debtor's attempts to confirm a plan were denied. The Court[3] was required to address multiple stay relief motions, applications for allowance of administrative expenses, and other matters.

During the chapter 12 case, Debtor remained in possession of the property of the estate. Debtor was also the *de facto* "manager" (though neither a member nor a managing member) of Clark's Crystal Springs Ranch, LLC ("CCSR"). Though Debtor had improperly filed his case as Jay Clark "dba Crystal Springs Ranch," the limited liability company, CCSR, was not a bankruptcy debtor.[4]

On October 30, 2012, during the time the chapter 12 case was pending, the Thomsons purchased a John Deere 8110 tractor ("JD Tractor") from CCSR for

---

[2] The Court takes judicial notice of its files and records in the case and adversary proceedings. Fed. R. Evid. 201.

[3] The Hon. Jim D. Pappas was the presiding bankruptcy judge from the inception of the bankruptcy case through June 10, 2013.

[4] A more fulsome explanation of the facts and history surrounding Debtor and CCSR is contained in this Court's decision in *Gugino v. Clark's Crystal Springs Ranch, LLC (In re Clark)*, 525 B.R. 107 (Bankr. D. Idaho 2014) (the "2014 Decision"). The 2014 Decision is discussed further below.

MEMORANDUM OF DECISION - 2

$71,000.00. The October 30, 2012 check, issued in payment for the JD Tractor, was made payable to "Clarks Crystal Springs Ranch LLC" and was endorsed for deposit by "Clark's Crystal Springs Ranch LLC By Jay Clark, Manager." Doc. No. 9-1. As discussed below, that check was deposited in a CCSR business checking account.

On May 31, 2013, the Court converted Debtor's case to a chapter 7 liquidation under § 1208(d) based on its finding that Debtor had committed fraud in connection with the case. Jeremy Gugino ("Trustee") was appointed as chapter 7 trustee. Days later, on June 7, 2013, Trustee commenced an adversary proceeding against CCSR and the Clark Farms Family Trust ("Trust") seeking a judgment substantively consolidating CCSR and the Trust with Debtor's estate. *See* Adv. No. 13-06016-TLM. The 2014 Decision was entered in that adversary proceeding.

Trustee obtained a TRO on June 10, 2013 (and subsequently a preliminary injunction), prohibiting CCSR from selling or transferring its assets from and after such date. *Id.* at Adv. Doc. No. 5. In his affidavit supporting the issuance of the TRO, Trustee stated that he had obtained possession of the CCSR checking account records. He noted that, over the preceding year (*i.e.*, June 2012–June 2013), funds in excess of $182,000 had been reduced to some $18,000. He further stated that many expenses paid by CCSR were not LLC obligations but were personal expenses of or payments to Debtor. Trustee also determined CCSR had

MEMORANDUM OF DECISION - 3

sold assets during the pendency of the chapter 12 case, but he stated that he could not at that time confirm whether all the funds from the sale of those assets had been deposited in the CCSR accounts. *Id.*

CCSR sold the JD Tractor in October 2012, over 7 months prior to the effective date of the TRO. This transaction occurred within the period of time encompassed by the CCSR records Trustee obtained.

The 2014 Decision followed an August 2014 trial in the adversary proceeding. That decision and the related judgment substantively consolidated CCSR and the Trust with the Debtor. Trustee requested, and the Court granted, such consolidation to be effective *nunc pro tunc* to March 27, 2012.

Under that Judgment, the assets of CCSR and/or the Trust were to be considered as assets of Debtor's estate and administered by Trustee. Any creditors of CCSR and/or the Trust were to be treated as if they were creditors of the Debtor. And the judgment provided that Trustee retained any chapter 5 avoidance powers. *Id.* at Adv. Doc. Nos. 108, 109. It did not address the extent of those powers or anything about their exercise.[5]

In that adversary proceeding, Trustee's June 7, 2013 complaint named several "John Doe" defendants. He alleged:

Defendant Does 1-10 are as-yet unknown individuals or entities who

---

[5] The decision and judgment are on appeal to the Ninth Circuit Bankruptcy Appellate Panel. *See* BAP No. ID-15-1010. There is no stay pending appeal.

MEMORANDUM OF DECISION - 4

> may have been the recipient of transfers as further described below. The exact identity of these Defendants is currently unknown. However, in the event the Trustee learns the identity of these individuals or entities, he will seek to amend this Complaint to properly name those individuals or entities.

*Id.* at Doc. No. 1 at 3. The substantive relief sought in that complaint was not specifically targeted at any of the so-called John Doe defendants. However, Trustee did allege that "the Company [*i.e.*, CCSR] has been selling certain assets during the pendency of the Debtor's Chapter 12 proceeding." *Id.* at 4.

In the present adversary proceeding, Trustee's complaint alleges that CCSR owned the JD Tractor as of March 27, 2012 (Debtor's petition filing date) and, in return for $71,000, CCSR transferred the JD Tractor to the Thomsons on October 30, 2012.[6] This transfer date was some seven months after the filing date, and about seven months before Trustee commenced the adversary proceeding seeking substantive consolidation and filed the affidavit noted above and obtained his TRO.

Trustee never amended the complaint in his substantive consolidation adversary proceeding to identify the John Doe defendants that were alleged to have received transfers from CCSR. Trustee also never issued any notice to the Thomsons—as potential John Doe creditors, or as parties in interest in the chapter 7 case, or otherwise—indicating Trustee's intent to assert substantive

---

[6] Nothing has ever been alleged or submitted to suggest this was anything other than an arm's length transaction.

MEMORANDUM OF DECISION - 5

consolidation theories or pursue transfer avoidance actions.

The substantive consolidation ruling was issued on December 30, 2014. The complaint initiating the action against the Thomsons and the other defendants herein was filed less than three months later on March 13, 2015.[7]

Given the judgment entered upon the 2014 Decision, Trustee characterizes the October 30, 2012 transfer of equipment by CCSR as a post-petition transfer avoidable under § 549(a).

## DISCUSSION AND DISPOSITION

The Thomsons' motion for summary judgment is based on the timing of Trustee's complaint, contending it is barred by the limitation period found in § 549(d).[8]

### A.  Summary judgment standards generally

This Court has summarized:

> Federal Rule of Civil Procedure 56, incorporated in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056 states: "The court shall grant summary judgment if the movant shows

---

[7] In addition to the instant adversary proceeding seeking transfer avoidance against the Thomsons, the Turners, the Olsons, and Dodge, Trustee filed several other similar actions. *See* Adv. No. 15-06002-TLM (filed Jan. 21, 2015 against the Sorensens, alleging a § 549 action related to a baler and combine transferred by CCSR for $105,000); No. 15-06006-TLM (filed Mar. 13, 2015 against Kerslake and Ayarza, alleging § 549 actions related to transfers of tractors by CCSR for $11,400 and $17,000); and No. 15-06008-TLM (filed Mar. 17, 2015 against John and Scott Clark alleging, *inter alia*, § 549 actions regarding multiple items of equipment).

[8] The Thomsons assert, in addition to the limitations defense, that when the transfer was made in October 2012, it was in the ordinary course of business and financial affairs of CCSR and thus not avoidable under § 549(a)(2)(B). This defense to Trustee's action is not part of the pending summary judgment motion.

MEMORANDUM OF DECISION - 6

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact, after which the opposing party must provide evidence establishing a genuine issue of material fact. *Poole v. Davis (In re Davis)*, 2012 WL 4831494, *2 (Bankr. D. Idaho Oct. 10, 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). But even if the opposing party fails to establish the existence of disputed facts, the moving party must still establish it is entitled to judgment as a matter of law. *See North Slope Borough v. Rogstad (In re Rogstad)*, 126 F.3d 1224, 1227–28 (holding the trial court erred by resting its grant of summary judgment on the opposing party's failure to file a response).

Additionally, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' are inappropriate at the summary judgment stage." *Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 861 (9th Cir. 2011) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). And all justifiable inferences must be drawn in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255).

*Gugino v. Clark's Crystal Springs Ranch, LLC (In re Clark)*, 2014 WL 2895428, *2 (Bankr. D. Idaho Jun. 25, 2014) (footnotes omitted).

Trustee's response to the motion, *see* Adv. Doc. No. 11, concedes there are no disputed factual issues. Trustee specifically comments that the material facts are not in dispute and states "the issues are legal in nature[.]" Adv. Doc. No. 11-1 at 2. The Court agrees. The consideration of disputed documents or conflicting testimonial affidavits is not required.[9] The legal issues are framed by the

---

[9] The defendants filed an affidavit of Kirk Thomson, which was short and effectively recited the facts set out above which Trustee does not dispute. Trustee filed no affidavits.

MEMORANDUM OF DECISION - 7

documents entered on the docket in this case, the underlying chapter 7 case, and the related adversary proceeding.

### B.   The § 549(d) limitation and equitable tolling

A trustee may bring an avoidance action under § 549, but must do so within the earlier of two years after the date of the challenged transfer or the time the case is closed or dismissed. *See* § 549(d). The case is neither closed nor dismissed. The challenged transfer occurred on October 30, 2012, and the present action was commenced on March 13, 2015, which is more than two years after such transfer. On its face, the action is time barred.

Trustee alleges, however, that the deadline should be "equitably tolled." His complaint, at ¶ 40, states:

> Because the Trustee diligently pursued the Adversary Case [for substantive consolidation], the Judgment was not entered until January 5, 2015, and until the Judgment was entered the Trustee did not have the ability to pursue these claims against Turner, Dodge, Olson Farms and Thomson, the statute of limitations imposed by 11 U.S.C. § 549(d) should be equitably tolled, and these claims allowed.

The limitation period of § 549(d) can be equitably tolled. *Olsen v. Zerbetz (In re Olsen)*, 36 F.3d 71, 73 (9th Cir. 1994). *Olsen* noted that § 546(a)(1) was similarly subject to equitable tolling. *Id.* (citing *Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc. v. Ernst & Young)*, 14 F.3d 1380 1384–85 (9th Cir. 1994)). While the Circuit did not elaborate in *Olsen* on the standards for application of this equitable principle or doctrine, the Ninth Circuit Bankruptcy

MEMORANDUM OF DECISION - 8

Appellate Panel did in *Akers v. Mattei (In re Dugger)*, 2012 WL 2086562 (9th Cir. BAP Jun. 8, 2012). It held, in the context of equitable tolling of the § 546(a)(1) limitations period, as follows:

> The two-year limitations period in § 546(a)(1) is subject to equitable tolling. *Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc. v. Ernst & Young)*, 14 F.3d 1380, 1384 (9th Cir. 1994). However, the case law of this circuit instructs that equitable tolling is rarely applied and disfavored. "The threshold for obtaining equitable tolling is very high." *Townsend v. Knowles*, 562 F.3d 1200, 1205 (9th Cir. 2009). Equitable tolling is "unavailable in most cases." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). *See Cal. Franchise Tax Bd. v. Kendall (In re Jones)*, 657 F.3d 921, 926 (9th Cir. 2011) (holding that equitable tolling is applied "only sparingly" because "Congress must be presumed to draft limitations periods in light of equitable tolling principles which generally apply to statutes of limitations."). Indeed, in cautioning against unjustified tolling of statutes of limitation, the Ninth Circuit has warned, "We should not trivialize the statute of limitations by promiscuous application of tolling doctrines." *Santa Maria v. P. Bell*, 202 F.3d 1170, 1179 (9th Cir. 2000) (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990).
>
> The equitable tolling doctrine held in its original formulation that the limitations period does not run while a party is unaware of a wrong without any fault or lack of diligence on his part. *Id.* As the doctrine of equitable tolling evolved, the additional requirement that some extraordinary circumstance stood in its way and prevented timely filing took on equal and in some ways greater significance. *Holland v. Fla.*, 560 U.S. 631, ___, 130 S. Ct. 2549, 2553, 177 L. Ed. 2d 130 (2010); *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005).
>
> Trustee, as proponent of equitable tolling, bears the burden of proving it should be applied. *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993) ("the burden to plead facts which would give rise to equitable tolling falls upon the plaintiff"); *Roberts v. Marshall*, 627 F.3d 768, 772 (9th Cir. 2010) ("A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been

MEMORANDUM OF DECISION - 9

pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.").

*Id.*, 2012 WL 2086562, at *7.

Since § 549(d) requires an action to be brought by the earlier of two years after the date of the transfer sought to be avoided or the date of closing or dismissal of the case, the operative deadline for the filing of the complaint was October 30, 2014.

Some of the authorities suggest that a defendant's fraud can operate to toll an otherwise applicable limitation period. There is, in this case, nothing whatsoever provided to suggest the Thomsons (or other defendants in this adversary proceeding) engaged in any conduct that would support equitable tolling of § 549(d). Trustee must instead rely on the general provisions of those authorities discussing his diligence and the presence of extraordinary circumstances.

Trustee argues that, whether or not the chapter 12 trustee was diligent, *he* was diligent once appointed on May 31, 2013. He also maintains that it is "equitable" for the deadline to be tolled so he can contest a post-petition transfer that might otherwise go unchallenged. He effectively characterizes the substantive consolidation litigation as an "extraordinary circumstance" standing in his way.

Trustee obtained a judgment establishing the effective date of substantive consolidation, *nunc pro tunc*, to March 27, 2012. Whatever other reasons Trustee

MEMORANDUM OF DECISION - 10

had for seeking this relief, it is clear he wished to avail himself of chapter 5 avoidance powers even though, under § 348(a),[10] the conversion of the case to chapter 7 in May 2013 would "not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief."[11]

The Thomsons note there was a trustee in the chapter 12 case that was pending at the time of the October 30, 2012 transaction. They also note that Trustee was appointed on May 31, 2013 and, thus, he had 16 months within which to address the transfer issue. There is no question Trustee was prompt in bringing the substantive consolidation action. He did so within one week of his appointment. But Trustee was even then clearly aware of the potential issues with bringing chapter 5 actions. In fact, he named John Doe transferee defendants in that complaint. However, Trustee never amended the complaint to identify them.

Trustee was also aware or on notice of the recipients of transfers that he

---

[10] This general rule of § 348(a) is subject to the exceptions in § 348(b) and (c), none of which are relevant here.

[11] The analysis under § 348(a) applies as well to the limitations on Trustee's chapter 5 actions imposed by § 546(a). That section establishes that actions under §§ 544, 545, 547, 548 or 553 may not be commenced after the *earlier* of (**1**) the later of (A) two years after the entry of the order for relief, or (B) one year after the appointment of the first trustee under sections 702, 1104, 1163, 1202 or 1302, assuming the appointment occurs within those two years from the order for relief, and (**2**) the time the case is closed or dismissed. *See* 5 Collier on Bankruptcy ¶ 546.02[2], n.29 (Alan N. Resnick and Henry J. Sommer, eds. 16th ed. 2015) ("In a case converted from one chapter to another, the two years under section 546(a)(1)(A) begins at the date of the original order for relief and not at the conversion date.").

Here, the case has not been closed or dismissed. The first trustee, Forrest Hymas, was appointed under § 1202 within two years of the order for relief. Thus, under § 546(a)(1), the deadline for actions under the denoted chapter 5 powers is two years from March 27, 2012. However, actions under these avoiding powers are not implicated as to the Thomsons.

MEMORANDUM OF DECISION - 11

might challenge.  His 2013 adversary complaint manifests as much.  Moreover, when the substantive consolidation action came to trial in August 2014 (a date still within the two year period that is relevant to the Thomsons' transaction), evidence was presented by Trustee that spoke to the issue.  In Adv. No. 13-06016-TLM, Trustee's trial Exhibit 107, itemized several dozen transactions by date including those involving now-adversary defendants John Clark, Scott Clark, Wes Dodge, Olson Farms, and Aaron Sorensen.  Importantly, at page 2 of this exhibit, the October 30, 2012 date of sale of the JD Tractor, the buyer Kirk Thomson, and the amount paid of $71,000 are all clearly noted.  Trustee introduced Ex. 107 at trial on August 20, 2014.  *Id.* at Doc. No. 93 (minute entry).  He disclosed it as a proposed exhibit two weeks earlier on August 6, 2014.  *Id.* at Doc. No. 82.[12]

Trustee therefore knew, at least by August 6, 2012—well prior to the applicable § 549(a) bar date of October 30, 2014—that the Thomsons had purchased the JD Tractor, on what date, and for how much.  Yet the Thomsons were not added as specific John Doe defendants, nor given any notice by Trustee that the requested relief against CCSR would include a relation back of the effective date of consolidation.

While it is true that the ultimate resolution of the substantive consolidation motion did not arrive until December 2014, Trustee had sufficient information by

---

[12] In addition, CCSR's trial exhibits included Ex. 201, a CCSR business checking registry.  At page 78 of that exhibit discloses an October 30, 2012 deposit of $71,000 for an "equipment purchase" from CCSR.

MEMORANDUM OF DECISION - 12

August 2014 with which to identify prospective transfer defendants should he be successful in his action against CCSR and the Trust. Trustee argues that he could not at that time bring a transfer avoidance action, because he had not yet consolidated CCSR assets into Debtor's estate. While that is accurate, it does not excuse the failure to disclose to those potentially affected—indeed potentially seriously impacted—parties of the pending consolidation litigation so they could be heard.

Trustee also argues in his briefing and at hearing that by adding transfer avoidance claims to the substantive consolidation litigation, he would "artificially and unnecessarily inject additional issues" into the case and this "would have been a wasteful use of court resources." Setting aside the putative (and gratuitous) concern over the Court's resources, it is clear Trustee had already "injected" these additional issues. He was the one who named John Doe defendants who were "recipient[s] of transfers." He was the one who alleged in his complaint, at ¶ 11, that he would amend to identify the John Doe defendants by name once those transferees were determined.

The case law, set out above, speaks of the potential for equitable tolling where the plaintiff not only pursues his rights diligently, but also "without any fault . . . on his part." *Dugger*, 2012 WL 2086562, at *7–8. As *Dugger* notes, obtaining equitable tolling is not solely about diligence; the limitation period will not run "while a party is unaware of a wrong *without fault or* lack of diligence on

MEMORANDUM OF DECISION - 13

his part." *Id*. An appeal to equity generally requires no inequitable behavior by the proponent. It is extremely difficult to credit Trustee with the benefit of an equitable principle where he could have, and did not, act equitably to the defendants even though presented with the knowledge and opportunity to do so.

Trustee also argues that substantive consolidation focuses on the conduct of a debtor and its creditors and so, because the Thomsons were not "creditors" of Debtor or CCSR but—instead—purchasers, "the substantive consolidation inquiry would not have involved the Thomsons at all." However, the Thomsons were identifiable transfer avoidance targets, and consolidation clearly affects them. The present suit demonstrates as such.

As outlined above, equitable tolling is a doctrine that in this Circuit "is rarely applied and disfavored," and "unavailable in most cases." It should be applied "only sparingly" and certainly not "promiscuously." Trustee, as the proponent, bears the burden of proving that it should be applied. "The threshold for obtaining equitable tolling is very high." Trustee has not met that threshold nor carried his burden.

The Thomsons' motion for summary judgment placed that aspect directly at issue. The parties have effectively agreed that there are no genuine issues of material fact. The question, rather, is whether the undisputed facts and this record meet the threshold required under the case law. They do not.

MEMORANDUM OF DECISION - 14

**CONCLUSION**

The Court determines that the Thomsons' motion for summary judgment finding the Trustee's action barred by the limitation provision of § 549(a) is well taken. On the record submitted, the limitation period may not be equitably tolled. Counsel for the Thomsons may submit a proposed order consistent herewith granting their motion, and a proposed form of judgment dismissing this action as to them.

DATED:  September 18, 2015

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE